Patrick M. Flatley
United States Bankruptcy Judge
Dated: Monday, April 04, 2011 9:52:56 AM

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MCCLURE PROPERTIES, INC., | ) | Case No. 10-1810 |
| | ) | |
| Debtor. | ) | Chapter 11 |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| MCCLURE PROPERTIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 10-146 |
| | ) | |
| FIFTH THIRD BANK, C2C REALTY, | ) | |
| LLC, and WILLIAM T. HOLMES, | ) | |
| SUCCESSOR TRUSTEE, | ) | |
| | ) | |
| Defendants. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

**MEMORANDUM OPINION**

McClure Properties, Inc. (the "Debtor"), filed a two count adversary complaint against Fifth Third Bank and William T. Holmes (collectively, the "Bank"). Count I seeks to set aside a trustee's foreclosure sale, conducted by Mr. Holmes, on the grounds that the foreclosure sale price was so low as to shock the conscience. Count II of the complaint seeks to avoid the foreclosure sale as being a fraudulent transfer under West Virginia law, W. Va. Code § 40-1A-4(a).

The Bank requests entry of a judgment on the pleadings on both counts of the Debtor's complaint. The Bank asserts that both counts should be dismissed on the grounds that the causes of action are subject to claim preclusion, the price received at a regularly conducted foreclosure sale cannot be fraudulent, and the claims against it are time-barred under the applicable statute of

1

limitations.

For the reasons stated herein, the court will dismiss Count II of the Debtor's complaint asserting a cause of action under W. Va. Code § 40-1A-4(a), but will deny the remaining relief sought by the Bank.

## I. STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(c), Fed. R. Bankr. P. 7012, "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for a judgment on the pleadings." In reviewing a motion for a judgment on the pleadings, the court "assumes the facts alleged in the relevant pleadings to be true, and . . . draw[s] all reasonable inferences therefrom." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 591 (4th Cir. 2004). Inferences are drawn in favor of the non-moving party. *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002).

## II. BACKGROUND

On May 26, 2006, the Debtor borrowed $2,240,000 from the Bank for the purpose of constructing and opening a gas station and convenience store. The property is located at 1434-36 Third Street, Huntington, West Virginia, and as of April 6, 2006, the Bank's appraiser opined that the property had a $1,800,000 value "as is" and a $2,800,000 value "as completed." The Bank's loan was secured by a deed of trust on the property, and the Debtor's principal, Victor McClure, guaranteed the note.

The Debtor operated the property as a gas station and convenience store for a time, but the Bank alleges that the Debtor defaulted on its debt obligations to it. On March 27, 2008, the Bank filed a complaint in the United States District Court for the Southern District of West Virginia, based on the court's diversity jurisdiction, seeking to recover on the note and guaranty.[1] One of the Bank's attorneys in the District Court action was Mr. Holmes. On May 2, 2008, the Bank filed an amended complaint, seeking recovery on the same causes of action, and on August 20, 2008, the Debtor filed its answer to the District Court lawsuit.

On June 18, 2009, while the District Court action was pending, Mr. Holmes, exercising his power as successor trustee under the deed of trust, sold 1434-36 Third Street to Dennis Johnson for

---

[1] *Fifth Third Bank v. McClure Properties, Inc.*, Case No. 3:08-cv-210 (S.D.W. Va.).

$460,000, and all the personal property for $17,245.[2]  After the sale, Mr. Johnson directed that the trustee's deed be in favor of C2C Realty, LLC.  The Bank applied the proceeds of the foreclosure sale to the Debtor's loan balance.

On July 9, 2010, the District Court issued its memorandum opinion and order on a motion for summary judgment filed by the Bank.  The District Court held that the Debtor and Mr. McClure were in default of the May 2006 loan agreement in the principal sum due, plus accrued but unpaid interest, and were liable for all late fees, fines, expenses and advances that had accrued on the note.  Due to a discrepancy in the amount claimed to be due, the District Court afforded the Bank additional time to file an accounting and explanation of the amount due within 14 days, with any response due within 7 days thereafter.

On July 23, 2010, the Bank provided its accounting, stating that $2,376,236.23 was owed under the note.  On July 26, 2010, the Debtor filed its Chapter 11 bankruptcy petition, which stayed further action against the Debtor in the District Court case.  Rather than respond to the Bank's accounting, Mr. McClure requested that the District Court stay the case and/or grant him an additional 60 days to respond to the Bank's accounting.  The District Court denied that request on August 3, 2010, giving Mr. McClure until August 6, 2010, to file his response.  No response was timely filed, and the District Court entered a final judgment against Mr. McClure on August 30, 2010, in the amount of $2,376,236.23.

## III. DISCUSSION

The Bank requests entry of a judgment on the pleadings contending that the Debtor's causes of action against it for inadequate foreclosure sale price and fraudulent transfer are: (A) precluded on the basis that the Debtor should have raised the inadequacy of the foreclosure sale price in the District Court action; (B) meritless on the grounds that the price received at a foreclosure sale cannot be fraudulent as a matter of law; and (C) barred by the applicable statute of limitations.

**A.     Claim Preclusion**

The Bank asserts that the Debtor's causes of action against it to avoid Mr. Holmes's June 18, 2009 foreclosure sale should have been raised by the Debtor in the District Court action, but they were not.  On that basis, the Bank contends that it is too late for the Debtor to attempt to avoid the

---

[2] The Bank contends that the personalty was sold for $34,490.96.

3

foreclosure sale in the bankruptcy court.

Claim preclusion prohibits a party from relitigating a previously adjudicated cause of action, and entirely bars a new lawsuit on the same cause of action. For the doctrine to apply a party must establish that: (1) there is a final judgment on the merits in a previous lawsuit, (2) the claims in the subsequent litigation are substantially the same as those in the previous litigation, and (3) an identity of parties or their privies exists in the two suits. *Pension Benefit Guar. Corp. v. Beverley*, 404 F.3d 243, 248 (4th Cir. 2005).

When new causes of action arise after the initiation of the complaint in the first action, however, those new claims are not the subject of the existing lawsuit and a party is not barred from raising the new causes of action in a subsequent lawsuit based on the party's failure to seek an amendment to the pleadings in the previous lawsuit to assert the new causes of action. *E.g.*, *Maharaj v. BankAmerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) ("[I]f, after the first suit is underway, a defendant engages in actionable conduct, plaintiff may – but is not required to – file a supplemental pleading setting forth defendant's subsequent conduct. Plaintiff's failure to supplement the pleadings of his already commenced lawsuit will not result in a res judicata bar when he alleges defendant's later conduct as a cause of action in the second suit."); *Young-Henderson v. Spartanburg Area Mental Health Center*, 945 F.2d 770, 774 (4th Cir. 1991) (doubting that claims could be precluded by an earlier judgment when the claims could not have been brought at the time the original complaint was filed); *Spiegel v. Continental Illinois Nat'l Bank*, 790 F.2d 638, 646 (7th Cir. 1986) ("In view of the fact that the two newly-alleged predicate acts of mail fraud occurred after the filing of Spiegel I, we agree with the district court's ruling that 'the doctrine of res judicata does not bar Spiegel II to the extent it is based on acts which occurred after Spiegel I was filed.'"); 18 *Moore's Federal Practice – Civil* § 131.22[1] (2011) ("A subsequent action that . . . alleges new facts . . . [that] establish independent grounds for a claim against the defendants in the previous action, [is not prohibited by] claim preclusion . . . .").

Here, at the time the Bank filed its March 27, 2008 complaint in District Court against the Debtor and Mr. McClure – and at the time the Debtor and Mr. McClure filed their August 20, 2008 answer to the amended complaint and asserted counterclaims – no deed of trust foreclosure sale had occurred. The trustee's foreclosure sale was not held until June 18, 2009. The core facts giving rise to the Debtor's alleged causes of action in this adversary proceeding concern the June 18, 2009

4

foreclosure sale. The Debtor could not have asserted such causes of action as counterclaims when it answered the Bank's District Court complaint because the facts underlying those causes of action did not yet exist.

Therefore, because the Debtor's claims in this adversary proceeding are substantially different from the claims of the parties in the previous District Court action, and based on facts that did not exist at the time the District Court action was filed by the Bank, no basis exists to grant the Bank's motion for a judgment on the pleadings based on the application of claim preclusion.[3]

**B.      Inadequate Price Obtained at a Foreclosure Sale**

By statute, the Bank asserts, the price Mr. Holmes received from Mr. Johnson / C2C Realty at the June 18, 2009 foreclosure sale is the property's reasonably equivalent value; thus, the Debtor has no cause of action to set aside the foreclosure sale as being for an inadequate price. W. Va. Code § 40-1A-3 ("[A] person gives a reasonably equivalent value if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, noncollusive foreclosure sale . . . .").

Importantly, the Debtor's complaint asserts two counts to set aside the foreclosure sale. The first is based on West Virginia common law, and the second is based on a creditor's right to set aside a transfer of the debtor's property as fraudulent when the price paid for the property is not its "reasonably equivalent value." W. Va. Code § 40-1A-4(a)(2).

Under Count I, the Debtor asserts that West Virginia common law allows a borrower to bring an action to set aside a foreclosure sale when the price received at the sale is so low as to "shock the conscience." *E.g.*, *Rife v. Woolfolk*, 289 S.E.2d 220 (W. Va. 1982) ("'A sale of real estate by a trustee will not be set aside upon the ground of inadequacy of price unless such inadequacy is so great as to shock the conscience of the chancellor.'") (quoting *Pence v. Jamison*, 94 S.E 383 (W. Va. 1917). To set aside a foreclosure sale for an inadequate price, "[t]here need be no showing of fraud,

---

[3] The Bank asserts that the propriety of the foreclosure sale should have been litigated when the District Court set a briefing schedule on the accounting for the Bank's deficiency judgment. Even if this were an accurate statement regarding the application of claim preclusion, the Debtor filed its bankruptcy petition before the time elapsed for it to respond to the Bank's accounting. Moreover, in Syllabus Pt. 4 of the Supreme Court of Appeals in *Fayette County National Bank v. Lilly*, 484 S.E.2d 232 (W. Va. 1997), held that "[a] grantor may not assert, as a defense in a deficiency judgment proceeding, that the fair market value of the real property was not obtained at a trustee foreclosure sale."

5

or any impropriety in the conduct of the sale . . . ." *Id.*

The statutory authority asserted by the Bank in support of its position that the price received for property at a foreclosure sale is deemed to be the property's reasonably equivalent value, W. Va. Code § 40-1A-3, by its own terms, only applies to a statutory cause of action to set aside a transfer of property as fraudulent under the Uniform Fraudulent Transfers Act. It does not apply to the Debtor's common law cause of action under *Rife* and *Pence*. Indeed, West Virginia courts have continued to recognize that foreclosure sales may be set aside when the price received shocks the conscience well after the 1986 enactment of § 40-1A-3. *E.g.*, Syllabus Pt. 3, *Smith v. Rusmisell*, 517 S.E.2d 494 (W. Va. 1999); Syllabus Pt. 2, *Benavides v. Shenandoah Fed. Sav. Bank*, 433 S.E.2d 528 (W. Va. 1993).

In Count II, however, the Debtor specifically asserts that the foreclosure sale is a voidable fraudulent transfer under W. Va. Code § 40-1A-4, which requires, as an essential element of the cause of action, that the debtor not receive "a reasonably equivalent value in exchange for the transfer or obligation." § 40-1A-4(a)(2). In turn, § 40-1A-3 provides that the price received for property at a regularly conducted, noncollusive foreclosure sale is the property's reasonably equivalent value:

> For the purpose of [§ 40-1A-4(a)(2)] . . . a person gives a reasonably equivalent value if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, noncollusive foreclosure sale or execution of a power of sale for the acquisition or disposition of the interest of the debtor upon default under a mortgage, deed of trust or security agreement.

§ 40-1A-3(b).

Consequently, by statute, if Mr. Holmes's trustee's sale was a "regularly conducted, noncollusive foreclosure sale" then whatever price was obtained at that sale for the property is the property's reasonably equivalent value for purposes of § 40-1A-4(a)(2) and the Debtor has no statutory cause of action for a fraudulent transfer under § 40-1A-4.

The Debtor does not concede that Mr. Holmes's trustee sale was "regularly conducted" or "noncollusive." The Debtor asserts that irregularities existed with Mr. Holmes's foreclosure sale in that: (1) Mr. Holmes was acting as one of the Bank's attorney's in the pending District Court action at the time he conducted the foreclosure sale; (2) the amount of the debt owed to the Bank was in dispute; and (3) a discrepancy in the property's value existed in that the Bank's appraiser

6

opined in 2006 that the property could be worth as much as $2,800,000 if construction and renovations were completed, while in May 2009, the Bank's appraiser asserted that the property was only worth $482,000 – after the construction of a gas station and certain renovations were made to the convenience store building.

First, West Virginia law allows an attorney for the beneficiary of the deed of trust to also be the trustee selling the property at the foreclosure sale:

> [I]t is quite true that the trustee in the deed of trust is the agent of both parties, and is bound to act impartially between them. . . . But the fact that the trustee was a member of a law firm in charge of the collection of the debt of the creditor, without more, is not sufficient to overthrow his act and deed. It is not an uncommon thing to make the attorney for the creditor trustee in a deed of trust. When, however, the trustee comes to making the sale or to deal with the trust property in execution of the trust, being the agent of both parties, he must act impartially and honestly between them . . . . He must give proper notice and he must endeavor to get the best price possible, and if there is doubt about the amount of the debt secured, or there are prior recorded liens uncertain in amount, or other facts and circumstances existing interfering with a proper execution of his duties in the premises, he is required to invoke the assistance of a court of equity.

*Copelan v. Sohn*, 82 S.E. 1016, 1018 (W. Va. 1914).

Therefore, the fact that Mr. Holmes was both the Bank's attorney and the trustee conducting the foreclosure sale does not render the trustee's foreclosure sale irregular or collusive.

Second, in the District Court action, the Bank alleged in ¶ 9 of its Amended Complaint that the Debtor had defaulted on its obligations required under the Note. In its Answer, the Debtor generally denied the existence of a default. In addition, the Debtor alleged six counterclaims, which were still pending and unresolved at the time of the June 18, 2009 foreclosure sale: breach of contract, breach of duty of good faith, fraud, intentional misrepresentation, negligent misrepresentation, and negligence. These counterclaims had the potential to offset amounts due under the Note.

In this adversary proceeding, however, the Debtor asserts in ¶ 11 of its complaint that its loan with the Bank was in default before the Bank initiated its District Court action. In responding to the Bank's motion for a judgment on the pleadings, the Debtor does not dispute that a default existed at the time of the foreclosure sale – only that there was a dispute as to the amount of the indebtedness owed. While there can be no sale by a trustee in the absence of default, W. Va. Code

7

§ 38-1-3, "[t]he fiduciary duty owed by the trustee in a trust deed given as security in connection with a . . . loan does not require the trustee to review account records to ascertain the actual amount due prior to foreclosing . . . ." Syllabus Pt. 2, *Lucas v. Fairbanks Capital Corp.*, 618 S.E.2d 488 (W. Va. 2005). "The trustee has limited powers, which do not include the power to resolve controversies over debts owed by the secured creditor to the debtor." *Villers v. Wilson*, 304 S.E.2d 16, 19 (W. Va. 1983).

In sum, the Debtor has acknowledged that a default existed on the Note at the time of the June 18, 2009 trustee's sale; thus, the court cannot find that other controversies concerning the amount of the debt due would cause an impropriety in the trustee's sale because the trustee had no duty (or ability) to resolve those disputes.

Third, the discrepancies in appraised value – from as much as $2,800,000 in 2006 to the $482,000 in 2009, causes concern about the appropriateness of the appraisals but does not, by itself, make the sale irregular or collusive.

The Supreme Court of Appeals of West Virginia has described the duty of a trustee conducting a foreclosure sale as entailing fiduciary-like duties and the Court directs the trustee to "look to the rights and interests of the trust-debtor, as well as to those of the trust-creditor, in-as-much as he is the agent of both parties, and bound to act impartially, between them." Syllabus Pt. 7, *Hartman v. Evans*, 18 S.E. 810 (W. Va. 1893). This duty requires the trustee to "obtain the best price he can" at the foreclosure sale. *Stephenson v. Point Pleasant Bldg. & Loan Ass'n*, 152 S.E. 790, 790 (W. Va. 1930); *see also* Syllabus Pt. 9, *Copelan v. Sohn*, 82 S.E. 1016 (W. Va. 1912) ("[B]eing then the agent of both parties he is bound, in executing the trust, to act honestly and impartially between the parties, and endeavor by proper notice and otherwise to obtain the best price for the property . . . ."); Syllabus Pt. 3, *Livey v. Winton*, 4 S.E. 451 (W. Va. 1887) ("A trustee in a deed of trust is the agent of both parties, and bound to act impartially between them. He is bound to bring the estate to the hammer, for the best interest of his cestui que trust, and should use all reasonable diligence to obtain the best price for the land.").

Other than complaining about a low foreclosure sale price, however, the Debtor does not otherwise attack the sale as not being regularly conducted, and the Debtor makes no allegation that David Johnson, or C2C Realty, LLC – the foreclosure sale purchaser – colluded with the Bank to purchase the property at a reduced price, or that the notice of the trustee's sale was somehow

8

defective. While a duty exists on behalf of the trustee to obtain the best price for the land, when the trustee is being sued under the Uniform Fraudulent Transfers Act for obtaining a low foreclosure sale price, the trustee is protected by the statute, W. Va. Code § 40-1A-3, against an allegation that the sale price was not the property's reasonable equivalent value. In short, the Debtor (standing in the shoes of a creditor pursuant to 11 U.S.C. § 544(a) and bringing a state law fraudulent transfer claim) cannot state that a foreclosure sale price was too low and thereby argue that the foreclosure sale was irregularly conducted and collusive, when that is one of the very arguments that W. Va. Code § 40-1A-3 was enacted to prevent.

Accordingly, § 40-1A-3 precludes the Debtor's statutory, state law, fraudulent transfer cause of action against the Bank under Count II of the adversary complaint, but does not affect the Debtor's common law cause of action under Count I to set aside the foreclosure sale for a price so low that shocks the conscience.

**C.     Statute of Limitations**

The Bank asserts that any cause of action to set aside a foreclosure sale for obtaining a price so low that shocks the conscience must be brought within one-year of the foreclosure sale. W. Va. Code § 38-1-4a. Because the foreclosure sale took place on June 18, 2009, the Bank asserts that the Debtor had until June 18, 2010 to file the action. The Debtor did not file bankruptcy until July 26, 2010, and did not file this adversary proceeding until October 28, 2010.

Under W. Va. Code § 38-1-4a, "no action or proceeding to set aside a trustee's sale due to the failure to follow any notice, service, process or other procedural requirement relating to a sale of property under a trust deed shall be filed or commenced more than one year from the date of the sale."

The Debtor's cause of action in Count I to set aside the trustee's sale, however, is not based on the failure of the trustee to follow any "notice, service, process or other procedural requirement." Instead, it is based solely on the premise that the price obtained by the trustee at the foreclosure sale is so low as to "shock the conscience," a cause of action for which has been recognized by the Supreme Court of Appeals. *E.g.*, *Rife*, 289 S.E.2d 220 ("'A sale of real estate by a trustee will not be set aside upon the ground of inadequacy of price unless such inadequacy is so great as to shock the conscience of the chancellor.'"). Thus, the Debtor's cause of action is not governed by the one-year statute of limitations provided in W. Va. Code § 38-1-4a.

9

## IV. CONCLUSION

For the above-stated reasons, the court will enter a separate order pursuant to Fed. R. Bankr. P. 7058 that dismisses Count II of the Debtor's adversary complaint.